Mr. Parham here for Ms. Ronau and Mr. is it Preeby or Pryby? It's Pryby, your honor. All right. Mr. Pryby, if at any time you're having difficulty hearing what's going on, please feel free to interrupt whoever is speaking so we can get that fixed. And we'll hear now from Mr. Parham. Good afternoon, your honors. May it please the court. I'm appearing today on behalf of the petitioners Sonia Guadalupe Laredo Rangel and her daughters Luisa Fernanda Lopez and Mary Jose Lopez. By statute, an applicant can establish eligibility to asylum through one of two paths, either past persecution or a well-founded fear of future persecution. Here, the petitioners were denied eligibility by either path due to errors that were committed by both the immigration judge and the board. And there were three errors that I want to focus on today, but I think it would help to start with a very small number of undisputed facts. These facts aren't disputed and they're central to the issues that I want to dive deeper into. And the first fact is a multiple eyewitness. I'm sorry to interrupt. Your honors, I'm unable to consistently hear what a closing counsel is saying, unfortunately. Okay. So, Mr. Parham, if you'd try to pull that microphone closer, maybe pull it around the light lamp. Try to speak a little louder as well. The issue seems to be that every second or so the volume drops. I cannot consistently hear even if he is speaking into the microphone. All right. Is it an echo problem? It might. It's like the volume is dropping. It's like whoever is speaking sounds very intermittent. It's a second of sound, a second of no sound, and so forth. Can you hear me, the presiding judge, okay? I can hear you. Again, intermittent session. A second of sound and then more second. I can hear you. Do we need to maybe just dial in again? Maybe this is a bad telephone connection. It sounds like if it's intermittent. Try calling the court using my phone on a different number. Is there a different number that I could call? I think we need to go ahead and reestablish the connection. Dial in again and see if we can get a better connection. Okay. Hang up and redial. Yes, I would say so. While you're doing that, I'll be right back. Okay. Hello, this is Mr. Harvey calling from the Department of Justice. All right. Yes, we can hear you, although it's a bit garbled. Can you hear me okay? I can hear you, Your Honor, yes. This is much better on my end. I'm sorry that it's not as good on your end. All right. Mr. Parham, again, just pull the microphone as close as you can to you and lean down. All right, so Mr. Parham is going to start again with his full 15 minutes. Speak slowly. We'll give you plenty of time. Thank you, Your Honor. May it please the Court, I'm here today on behalf of the petitioners, Sonia Guadalupe, Laredo Ron-Hell, and her daughters, Luisa Fernanda Lopez and Mary Jose Lopez. By statute, an asylum applicant can establish eligibility through one of two paths, either by establishing past persecution or establishing a well-founded fear of future persecution. Here, the IJ and the Board determined that the applicants established neither, and we believe that this was error. And there are three issues I'm going to cover. I want to go over just very quickly a few critical facts that are central to these issues. The first is multiple eyewitnesses confirmed that in June 2014, Ms. Laredo's son was disappeared by the Mexican Marines, which is a group, as Ms. Petitioner's expert submitted a declaration on and testified to, with a well-documented history of human rights abuses, including retaliating against those who speak out against those practices. Despite the risk, for several months, Ms. Laredo engaged in a campaign to hold the perpetrators of this disappearance to account. She engaged in protest. She submitted complaints to Mexican and U.S. authorities, and she spoke to the media. And when that didn't work, she personally confronted the rear admiral of the Navy that she believed was responsible while he was with the U.S. consul, and that's important because her son was a U.S. citizen. He didn't live in Mexico. He was visiting Mexico. Sometime after that event, Ms. Laredo learned that another eyewitness had been threatened by the Navy. They had visited him to tell him that if he said anything about the matter, he would be disappeared. On October 31, 2014, she delivered documents to the U.S. consulate related to the case at their request. She spoke to the state's attorney, and on that night, uniformed members of the Navy showed up at her house after 9 p.m. They were looking for her. They entered violently, according to eyewitnesses, and they stole her belongings. She didn't wait to see what else they would do. She left. She reported this to the U.S. consulate, and she came to the United States. So summarize, you've already said it, but summarize briefly how many incidents there were. The last one was when the home was ransacked, right? That's correct. So that was the second or the third incident that you're alleging? The Navy visited her home twice in one night, but the persecution to the petitioners was the ransacking. So everything happened on one occasion? That's correct. One calendar day, all right. Yeah, the harm to the petitioners happened on one calendar day. And then from that, you infer the fear of future persecution of some sort of future misconduct. That's correct. We believe that the threat that the ransacking presented is persecution, is past persecution. And I say that there was one event, but this is a culmination of a series of events that followed the disappearance of her son. So this is a four-month period where it's a very active period. She's protesting, she's speaking in the media, she's filing complaints, and then her home is ransacked. And there are other things going on at this time, too, and these are in the record. There were three other citizens, U.S. citizens at the time, unrelated to this disappearance, that were found in the same area and that witnesses had said were involved with the Marines. Another eyewitness was threatened approximately a month before the ransacking. Unrelated, though, to your clients, is that right? He is not family of my clients. He was an eyewitness to the disappearing of Ms. Laredo's son. Two issues just legally related to this line of questioning. There's the imputation problem and there's then the aggregation problem. Am I correct that in order for you to show that this record compels the conclusion that the I.J. was wrong, I'm focusing just on past persecution? It has to be persecution of the petitioners. Even if it is deeply tragic and brave of her to campaign to find and hold accountable people that disappeared the son, I think your claim as to past persecution of these petitioners is the ransacking of the home. That's correct. Okay. And so the difficulty there is when she had her credible fear interview, she was pretty honest and clear that she was never threatened in Mexico and never hurt in Mexico. The only incident is the property ransacking, and then one asks is a single incident of property damage, does that compel the conclusion that she was persecuted? Am I looking at it wrong? I believe so, and I think that the distinction here is was the ransacking a threat? What Ms. Laredo was referring to when she said that she wasn't threatened by the Navy, it never came to her and said we are going to disappear you if you continue talking. She was asked has anyone ever threatened you in Mexico? Answer, no. Have you been harmed in Mexico? Answer, no. Very honest about herself. How can that, as to petitioners, with that credible fear statement, how do you reverse the I.J.'s determination that she wasn't threatened or harmed? So Ms. Laredo was very clear that she left the country because of the ransacking. The question is, is the ransacking a threat that rises to the level of persecution? Is it a death threat? So what do we, what's the framework for assessing whether that constitutes a threat that is persecution? In our Goita Hernandez, which we submitted, it was issued after our briefing was complete. We submitted a supplemental authority on it. The court held very clearly threats of death or other serious harm are persecution if they're objectively credible. And so here we have Ms. Laredo, she fled the country. She believed it was credible. You have the two neighbors that called her. One neighbor said she was very afraid when she saw the Navy there. Another neighbor called her and said you need to get out. She had her mother-in-law. She had her— How do you harmonize that with her answer? No, I wasn't threatened. In other words, the house is ransacked. From that, it is one would be scared. But then she says I wasn't personally threatened and I wasn't harmed. What's the case that says still the fact that they go through your property? It's not the property. It's the threat. Yeah, but she said she wasn't threatened. But the IJ held she had a subjectively genuine fear of persecution. She had a subjectively genuine fear because of what had happened to her that if she went back, she would be killed. That's the future. Now you're shifting to fear of future persecution. It's part of the fear of future persecution inquiry. But she left after the ransacking because she was afraid. And it's a legal question of is this a threat. She wasn't—the Navy never came to her and said we're going to disappear. That's not what the Navy does. This isn't a gang violence situation where they're open and notoriously violating the law. They disappear people. No one ever hears from them again. This is well-documented, country conditions evidence, expert evidence. This is the MO of this group. So it's less ransacking and it's more the son goes missing. It's the son goes missing. She speaks out against it. And then they come to her house. There are three reasons why they come to her house. Three possibilities on this record. They're going to kill her, they're going to arrest her, or they're trying to send her a message. The message being we can and we will take everything from you if you continue to talk about your dead son. The record doesn't permit any other inference. There's no suggestion that this was part of any lawful process. Right. She makes an accusation in the presence of a U.S. consul. And I guess one could infer that the consequence of what they felt might have been a false accusation was extra-legal ransacking of the home. Do you have a case that means that that compels the conclusion, the person? I'm sorry. I don't understand the question. What's your, again, my sort of broken record question, case. What's the case that compels the conclusion of past persecution when property is ransacked? I don't think it's that property is ransacked. I believe it's the threat. And Argueto Hernandez, Tamara Gomez, these cases deal with credible threats. Is the threat credible? And those cases are gang violence, and this is a very different situation. This isn't a gang. This is the military. And the military operates differently. It's not sending death threats in the mail. It's not making calls and leaving evidence of what it's doing. The Mexican Marines, the petitioner's expert testified, are receiving significant sums of money from the U.S. They can't be seen as a criminal organization. So it's a very different type of situation than you have in Tamara Gomez and Argueto Hernandez. But the takeaway is that it's just as credible. The evidence shows that the threat is every bit as credible. And if a threat of death or serious harm is credible, Argueto Hernandez says that is past persecution. Was there a second son that went missing? There was a second son that went missing. After she left the country, he stayed. He didn't live with her, and she doesn't know why he went missing. Unless there are other questions about past persecution, I also want to cover well-founded fear of future persecution because this is a distinct analysis. It's a well-founded fear of future persecution. You're looking to whether it's a two-part test. The applicant has to prove a subjectively reasonable fear and that that fear is objectively reasonable. Again, Ms. Laredo, petitioner, satisfied the first part of the standard. They established that their fear was subjectively reasonable. The IJ held that they were credible. The IJ concluded petitioners have established a subjectively genuine fear that they'll be persecuted if they return to Mexico. Where the agency erred is in how it assessed the objective reasonability of that fear. And essentially the agency's conclusion was that petitioners failed to meet the standard because they did not establish that they were harmed by the Navy during the four-month period between when her son went missing and when her home was ransacked. And so this was error for a couple of reasons. First, it wrongly focused on the absence of past harm in concluding that petitioners failed to establish an objectively reasonable fear of future harm. In Zao, this court held that an applicant is not required to prove that she has been persecuted in the past because this would render the future persecution inquiry redundant of the past persecution analysis. In Cabrera, the court held that it is well established in this circuit that requiring a showing of past persecution to support a well-founded fear of future persecution is an erroneous application of the law. So the well-founded fear standard recognizes that just because something hasn't happened, that doesn't mean it's not going to happen. That's why there is a well-founded fear standard. And it is entirely unclear why the agency is focusing on this four-month period because the circumstances aren't the same during this four-month period. Her risk didn't arise when her son went missing. Her risk arose because of the events that took place after, because she began to protest, because she began to speak to the media. And these happened at different times over the course of those four months. It wasn't until the middle of September that she personally confronted the rear admiral that she believed was personally involved in this incident while he was with the U.S. Consul. It wasn't until early October that she found out that another eyewitness had been threatened, that he would be disappeared if he said anything. It wasn't until late October that there were other events in Mexico that would have made the Marines more sensitive to this issue, specifically the disappearance of three other U.S. citizens in the same area. And on the day that her home was ransacked, on October 31st, she delivered documents. She was still following up. She delivered documents to the U.S. Consulate. She had talked to the state's attorney. She had gone to the morgue to look at the three other U.S. citizens that had disappeared to see if any of them was her son. None of them were. But all of these events increased her risk. By continuing to push for justice, she increased her risk, and the more she pressed, the more risk she faced. So by looking at the four-month period and establishing and concluding that there was no harm during that period and therefore there will be no harm, that was error. Because I'm running out of time, I want to cover a couple of other quick points here. A pattern or practice is also a way you can establish. Slow down just a little bit. Sorry. I apologize, Your Honor. An applicant can also establish a well-founded fear based on a pattern or practice. And here, and that is completely independent of any personal harm that would exist to the specific petitioner. Here, the IJA considered the evidence that petitioners had presented regarding pattern or practice, including country conditions evidence, their expert report. And it concluded, though, that respondents did not provide evidence showing that the Mexican Navy had warned them to keep silent about Julio's forced disappearance, nor produced any pictures showing that the Mexican Navy had, in fact, ransacked the respondent's home. So an evaluating pattern or practice went straight back to the individual petitioners hadn't experienced harm. In addition, the applicants are not required to prove that they will be singled out for persecution. A well-founded fear requires something less. It requires that an applicant establish to a reasonable degree that a return would be intolerable. And in Cardozo-Fonseca, the Supreme Court held that even a 10 percent chance of persecution can satisfy that standard. That's not the standard the Board applied. It stated, we agree with the immigration judge's conclusion that the evidence does not establish a respondent would be forcibly disappeared or experience other harm rising to the level of persecution. I'm out of time. Yes, thank you, Mr. Parham. And you've saved time for rebuttal. Mr. Priby. May it please the Court, Christopher Price, attorney general. Can your Honors hear me okay? It's not very clear, so you need to just speak as slowly as you can. Yes, Your Honors. I appreciate the Court's permission to appear telephonically today. Your Honors, the core of the petitioner's case is that they disagree with the agency's weighing of the evidence. Congress has mandated that this Court must, however, defer to the agency's finding of fact unless every reasonable adjudicator would disagree with the agency. The petitioners have instead focused on ginning up purported legal errors by picking nits with the agency's decisions. But the agency did not err. It applied the correct legal standards, and the record does not compel disagreement with its factual findings. This Court should therefore deny the petition for review. In response, first, to the petitioner's argument regarding pattern or practice, that argument is waived. They never made this argument in their blue brief. It's just waived. So this Court need not consider that. Additionally, if you don't show pattern or practice, the only way you show a well-founded fear of future persecution is by showing that you would at least have a reasonable fear of being singled out. So that is the appropriate inquiry here. The petitioners are focusing too much on this would-be or will-be language. The Board articulated the correct standard that this Court has laid out for objective fear, and it stated it multiple times in its opinion. So when it says the petitioner is not shown that she will be or would be persecuted or subject to harm rising to the level of persecution, that's not the Board arbitrarily changing its standard in the middle of its opinion. That's the Board just implying the future nature of the harm that she is describing or purporting. The Board also never held that past persecution is required. The Board specifically cited the Cabrera standard. And just because past persecution doesn't happen, the fact that a government does or does not undertake activities, given that the petitioner is for four months loudly accusing the Navy of disappearing her son, the lack of activity by the government in that time is still probative of the risk of her future harm. The Board isn't saying that you are denied because you didn't show past harm. It's saying the evidence that you've provided is not sufficient to outweigh the fact that the government had no inclination to do anything to her over that period of time. I also want to point out to the Court that although we've been speaking of ransacking her house, the Immigration Judge and the Board never found that this was a ransacking. They used ransacking in quotation marks or they said allegedly ransacking. All we have are some hearsay statements about they violently entered and they took personal property and possibly destroyed personal property. This is similar to what law enforcement does in this country. You break down the door of a place that belongs to someone where there might be evidence of criminal activity. So violently entered could mean they just broke down the door. The photographs show nothing to show that there was some sort of ransacking or widespread destruction of her property. In short, there are enough details in this case that weigh against the petitioner's viewpoint of the evidence that a reasonable adjudicator is not compelled to disagree with the agency's ultimate findings. And that is the sum of this case. Mr. Privey, this is Judge Higginson. Yes, Your Honor. The various circuits do struggle with what is sort of the minimum to qualify as past persecution. You don't disagree, do you, with the Argetta case that was submitted to us in the 28-J that a threat of serious harm can constitute past persecution if it's a credible threat. Do you disagree with that proposition? I don't disagree with the proposition, but I don't see that this case is relevant here. The petitioner was citing this as part of their argument of requiring past persecution, that the board was somehow requiring past persecution, and that's simply not what they did. So you're saying you accept that legally, but you disagree effectually. So let's imagine the facts were incontrovertible that this commander had killed her son, and then when she made a public accusation against him, the next day the commander came and ransacked her son. Am I right that that would compel, just that one act of property violence, would compel or wouldn't compel the conclusion that this petitioner suffered past persecution? Just to make sure I'm clear on your hypothetical, Your Honor, are you saying that the commander came and ransacked her home or disappeared her son? I'm saying, well, let's make it more immediate from when these statutes emerged. Let's say the government of Germany goes to send a message to Jewish people, and the message is just a single incidence of property harm. They burn the Jewish person's house down. The Jewish person flees. I would think that would be easily stated to be actionable past persecution. Even though it's a nonverbal threat against private property. I know this is a hypothetical, but you wrote about this on pages 35 and 36 of your brief, and I came away unclear when you cite our unpublished cases that themselves cite other unpublished cases to imply that threats might not qualify, property threats might not qualify, maybe only if they accumulate. I don't see that as a rule of law, and I'm trying to get you to tell me what the government's position is, specifically if property is burned down or destroyed, if that's credibly perceived as a threat, it could qualify, yes or no? Yes, but that's not the case that we have here. That's not what we have here. I just wanted to make sure that a threat can be communicated through property damage, and it doesn't have to be multiple incidents of threat if it's credible in a single threat. I agree with that proposition, Your Honor. Okay. Thank you. I appreciate that clarification. Yes, Your Honor. If Your Honors have no further questions, then the government would ask that this court please deny the petition for review. Thank you. All right. Mr. Parham for rebuttal. Thank you, Your Honors. Counsel noted that the standard is substantial evidence, that the evidence has to compel the conclusion that petitioners win, that the IJ was wrong, the board was wrong. There were a couple of legal issues I identified, whether they conflated the standard under the well-founded fear standard with a past persecution analysis, whether they focused on past persecution and applying whether they have a well-established fear or a well-founded fear of future persecution, and whether the board imposed too high of a standard in the well-founded fear analysis by requiring them to prove that they would be personally targeted if they return to Mexico. They're not required, as I mentioned, they're not required to prove that they will be targeted. They're only required to prove to a reasonable degree the return would be intolerable. How long was it that she was speaking publicly against them before the house was ransacked? She began speaking publicly against them shortly, did you say before the house was ransacked? Yeah, how much time was she out there public with nothing occurring, verbally, physically, and then there's the house ransack. She began protesting shortly after the disappearance, and it was a four-month period. And so you heard the government suggesting that's not consistent with a threat. She's out there publicly even to the U.S. ambassador. But the threat can't look backwards, right? There are a lot of cases that look at the length of time an applicant stays in the country after they're threatened. And if an applicant stays in a country after they're threatened, then there's an inference that they don't have a well-founded fear. But she left right after she was threatened. The question is, did she have a basis for a well-founded fear now that we know she's been targeted, not before she was targeted. You're stressing more the fear of future persecution than trying to work around her answers that she wasn't threatened and she wasn't harmed, or is that not? I believe that when she said that she wasn't threatened or harmed, she was talking about physical harm and verbal threats, direct threats from someone in the Navy, and that she believed genuinely that she had been threatened when they came to her house. She just didn't phrase it as a threat because she was thinking of a verbal threat. But it was a threat to her. That's why she left. The IJN board did not find it was a ransacking. This is not hearsay evidence. This was an eyewitness that said she saw the Navy going in, and this was an issue. In her husband's case, he couldn't present corroborating evidence that the house was ransacked because his case proceeded right after he arrived. She did. She had it. She had someone sign a declaration that they saw the Navy going in. The other woman, her neighbor who called her, wouldn't sign a declaration because she was afraid of reprisals. And that's in the record as well. The government mentioned that this is what law enforcement does in the U.S. This is not what law enforcement does in the U.S. The crux of that argument is don't connect the dots. This is the same argument the government made in Zhao. Look at all of these things individually. If you connect the dots, it leads to one conclusion. The Navy came to her house looking for her. The Navy wanted to do something to her that was harmful to punish her. It wanted to punish her because she had been speaking out against them, and that's why she fled. And that's exactly why we have asylum laws. And with that, I'll yield the rest of my time. Thank you, Your Honors. Thank you, Mr. Parham. Your case is under submission, and we certainly appreciate your and your firm's participation in this case. And thank you, Mr. Priby, for participating remotely. The case is under submission. The last case for today, Culberson v. Clay County.